UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                             :

TRUSTEES OF THE NEW YORK CITY DISTRICT  :
COUNCIL OF CARPENTERS PENSION FUND,    :
WELFARE FUND, ANNUITY FUND, and         :
APPRENTICESHIP, JOURNEYMAN RETRAINING, :
EDUCATIONAL AND INDUSTRY FUND,        :
TRUSTEES OF THE NEW YORK CITY          :
CARPENTERS RELIEF AND CHARITY FUND,   :
THE NEW YORK CITY AND VICINITY        :
CARPENTERS LABOR-MANAGEMENT         :
CORPORATION, and THE NEW YORK CITY    :
DISTRICT COUNCIL CARPENTERS,        :
                                             :

                        Petitioners,    :
                                             :

               v.                    :
                                             :

ALLIANCE WORKROOM CORPORATION,     :
                                             :

                        Respondent.    :
                                             :
------------------------------------------------------------X

13 Civ. 5096 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

      Trustees of the New York City District Council of Carpenters Pension

Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman

Retraining, Educational and Industry Fund (the "ERISA Funds"), Trustees of

the New York City Carpenters Relief and Charity Fund (the "Charity Fund")

(together with the ERISA Funds, the "Funds"), the New York City and Vicinity

Carpenters Labor-Management Corporation, and the New York City District

Council Carpenters (collectively, "Petitioners") commenced this action on

July 22, 2013,[1] petitioning the Court pursuant to Section 502(a)(3) of the

---

[1]    Although Petitioners commenced this action by Complaint, the Court construes their
filing as a petition to confirm arbitration because Petitioners "met the notice

Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29

U.S.C. § 1132(a)(3); Section 301 of the Labor Management Relations Act of

1947 ("LMRA"), as amended, 29 U.S.C. § 185; and Section 9 of the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm and enforce an arbitration

award (the "Award") issued against Respondent Alliance Workroom Corporation

("Alliance").  To date, Alliance has neither responded to Petitioners'

confirmation action nor otherwise sought relief from the Award.  For the

reasons set forth in the remainder of this Opinion, Petitioners' Petition to

confirm, and their related request for attorney's fees and costs incurred in

bringing this action, are granted.

## FACTUAL BACKGROUND[2]

**A.      The Collective Bargaining Agreement**

Petitioner New York City District Council Carpenters (the "Union") and

Respondent are parties to a Collective Bargaining Agreement, effective

October 11, 2002 (the "CBA").[3]  As relevant to this case, the CBA required

Respondent to make certain payments to Fringe Benefit Trust Funds, including

---

[2]   requirements and have requested the appropriate relief for a petition."  *Trustees of New York City Dist. Council of Carpenters Pension Fund* v. *Premium Sys. Inc.*, No. 12 Civ. 1749 (LAK) (JLC), 2012 WL 3578849, at *2 n.2 (S.D.N.Y. Aug. 20, 2012) (Report and Recommendation); *New York City Dist. Council of Carpenters Pension Fund* v. *Brookside Contracting Co.*, No. 07 Civ. 2583 (WHP), 2007 WL 3407065, at *1 n.1 (S.D.N.Y. Nov. 14, 2007).

[2]   The facts are drawn from Petitioners' Petition (Dkt. #1), as well as the Declaration of Charles Virginia in Support of Motion for Default Judgment ("Virginia Decl.") and corresponding exhibits thereto (Dkt. #6).

[3]   The New York City District Council Carpenters was formerly known as District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, and is identified as such in the CBA.  (Compl. ¶ 1).

the Petitioner Funds here, on behalf of all its carpenter employees in
accordance with schedules set forth in the CBA.  (*See* Virginia Decl., Exh. A at
23).  In order to verify that the requisite contributions had been paid, the CBA
authorized Petitioners to conduct an audit of Respondent's books and payroll
records, including cash disbursement records.  (*Id.* at 24).

The CBA also included dispute resolution provisions governing any
arbitration and judicial proceedings related to disputes concerning
Respondent's obligation to make payments to the Fringe Benefit Trust Funds.
With respect to arbitration, the CBA provided for the Union and Respondent to
arbitrate "any dispute or disagreement" concerning payments to Fringe Benefit
Trust Funds before an impartial arbitrator designated by the agreement.
(Virginia Decl., Exh. A at 31).  The CBA vested the arbitrator with broad
authority, specifying that "[t]he arbitrator shall have full and complete
authority to decide any and all issues raised by the submission and to fashion
an appropriate remedy including … monetary damages … interest, liquidated
damages, and/or costs as may be applicable." (*Id.*).  The CBA also made clear
that "[t]he arbitrator's award in this regard shall be final and binding upon [the
Union and Respondent], and shall be wholly enforceable in any court of
competent jurisdiction." (*Id.* at 31-32).

As for judicial proceedings, the CBA provided, in relevant part:

> In the event that formal proceedings are instituted before a court of
> competent jurisdiction by the trustees of a Benefit Fund or Funds
> [i.e., the Funds in this case] to collect delinquent contributions to
> such Fund(s), and if such court renders a judgment in favor of

such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest … reasonable attorney's fees and costs of the action[,] and such other legal or equitable relief as the court deems appropriate.

(Virginia Decl., Exh. A at 30).

## B.   The Arbitration Proceeding

Pursuant to the CBA, Petitioners conducted an audit of Respondent's books and records for the period November 10, 2009, through March 26, 2012 — an audit that revealed that Respondent had failed to make contributions as required under the CBA in the principal amount of $898.59. (Virginia Decl. ¶ 5).  Thereafter, a dispute arose between the Union and Respondent concerning Respondent's failure to remit the payments allegedly due, as uncovered by the audit.  (Compl. ¶ 13).  In accordance with the CBA's arbitration provision, set out above, this dispute was submitted to arbitration before Roger Maher, the impartial arbitrator designated by the CBA.  (Virginia Decl. ¶ 6).  At the arbitration, the Union requested the monies due (including delinquency assessments and interest) plus attorney's fees, the arbitrator's fee, court costs, audit costs, and a "promotional fund fee … as required and set forth in the underlying written contract," for which the arbitrator received evidence substantiating the amounts sought.  (Virginia Decl., Exh. B).

On May 7, 2013, Arbitrator Maher convened the arbitral proceeding after proper notice was provided to the parties.  (Virginia Decl., Exh. B).  Although no one appeared on behalf of Respondent, Arbitrator Maher found that counsel

4

for Petitioners submitted proof that Respondent "had legally sufficient notice of [the] proceeding and the claims against" it.  (*Id.*).  Further, because there had been no request by Respondent for an adjournment or extension of time to appear, Arbitrator Maher found Respondent to be in default and "proceeded to hear the testimony and take evidence on the claims of the Petitioners." (*Id.*).

The evidence submitted at the arbitration established that: (i) Respondent was bound by the CBA; (ii) the CBA required Respondent to make certain payments to Fringe Benefit Trust Funds on behalf of all its carpenter employees; (iii) the CBA authorized Petitioners to conduct an audit of Respondent's books and records so as to confirm that all the required payments had been made; and (iv) an audit of Respondent's books and records was in fact conducted.  (Virginia Decl., Exh. B).  Testimony from the auditor further established that the audit uncovered delinquencies in the amount of contributions due by Respondent during the period of November 10, 2009, through March 26, 2012, and that a summary of the audit report (the "Summary Report") had been provided to Respondent.  (*Id.*).  The auditor's testimony included explanations of the accounting method employed during the audit and the computation of the amount of each alleged delinquency. (*Id.*).  The Summary Report, a copy of which was admitted in evidence at the arbitration, identified that the total amount of delinquency and interest was $1,223.74.  (*Id.*).

**C.     The Arbitrator's Decision**

Based on "the substantial and credible evidence of the case as a whole,"
the arbitrator found that Respondent was delinquent in the payments it owed
to the Fringe Benefit Trust Funds as required under the CBA, and that it was
required to pay a delinquency assessment and interest on its delinquency, plus
attorney's fees, the arbitrator's fee, court costs, audit costs, and the promotion
fund fee as provided for under the CBA, for a total of $5,598.77.  (Virginia
Decl., Exh. B).  This figure comprised the following amounts: (i) principal in the
amount of $898.58; (ii) interest in the amount of $143.32; (iii) liquidated
damages in the amount of $179.72; (iv) late payment interest in the amount of
$2.11; (v) a promotional fund fee in the amount of $15.21; (vi) court costs in
the amount of $400.00; (vii) attorney's fee in the amount of $1,500.00; (viii) the
arbitrator's fee in the amount of $500.00; and (ix) audit costs in the amount of
$1,950.82.  (*Id.*).  The arbitrator then ordered Respondent to pay the Union
$5,598.77 "with interest to accrue at the rate of 5.25% from the date of [the]
award."  (*Id.*).  A copy of the Award was provided to Respondent, but
Respondent has failed entirely to comply with it.  (*Id.*; Virginia Decl. ¶ 9).

**D.     The Instant Litigation**

As provided for by the CBA, on July 22, 2013, Petitioners filed their
Petition (styled as a Complaint) requesting that the Award be confirmed,
ordering Respondent to pay the Funds $5,589.77, with interest at the rate of
5.25% from May 9, 2013 — the date of the Award — and ordering Respondent

6

to pay Petitioners' attorney's fees and costs in prosecuting this action.  (Compl. ¶ 1).  Pursuant to Section 306 of the New York Business Corporation Law, on July 24, 2013, Petitioners served a copy of the Summons and Complaint on Respondent by delivering two copies of same to the New York State Secretary of State.  (Dkt. #5).  *See* N.Y. BUS. CORP. LAW. § 306(b)(1).

By Order dated July 31, 2013, this Court ordered Petitioners to submit any additional materials in support of their Petition by August 14, 2013. (Dkt. #3).  Respondent was similarly ordered to submit any opposition to the Petition by August 28, 2013, and Petitioners were to submit any reply by September 4, 2013.  (*Id.*).  On August 1, 2013, Petitioners served a copy of the Court's July 31 Order on Respondent by sending a copy of same to Respondent via overnight mail.  (Dkt. #4).

On August 13, 2013, Petitioners submitted a Declaration in Support of Motion for Default Judgment in further support of their Petition.  (Dkt. #16). Respondent failed to comply with the July 31, 2013 Order and, to date, has filed no documents in this case nor corresponded with the Court to request any extension of time in order to do so.

## DISCUSSION

### A.    Confirmation of Unopposed Arbitration Awards

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process."  *Porzig* v. *Dresdner,*

*Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).  "To
encourage and support the use of arbitration by consenting parties," the Court
"uses an extremely deferential standard of review for arbitral awards." *Id.* at
139.  "Further, 'the federal policy in favor of enforcing arbitration awards is
particularly strong with respect to arbitration of labor disputes.'" *Supreme Oil
Co., Inc.* v. *Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (quoting *New
York Hotel & Motel Trades Council* v. *Hotel St. George*, 988 F. Supp. 770, 774
(S.D.N.Y. 1997)).  In such cases, "[i]t is only when the arbitrator strays from
interpretation and application of the agreement and effectively dispenses his
own brand of industrial justice that his decision may be unenforceable." *Major
League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001) (internal
quotations marks omitted); *see also id.* (holding that courts cannot review the
merits of arbitration awards entered into pursuant to an agreement between an
employer and a labor organization).  Indeed, confirmation of an arbitration
award is generally "a summary proceeding that merely makes what is already a
final arbitration award a judgment of the court, and the court must grant the
award unless the award is vacated, modified, or corrected." *D.H. Blair & Co.* v.
*Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and
citation omitted); *Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 582
(2008) ("[A] court 'must' confirm an arbitration award 'unless' it is vacated,
modified, or corrected [under § 10 or § 11]." (quoting 9 U.S.C. § 9)).

Courts in this Circuit will vacate an arbitration award "only upon finding a violation of one of the four statutory bases [enumerated in the FAA], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law." *Porzig*, 497 F.3d at 139.[4]  A "party moving to vacate an arbitration award has the burden of proof by clear and convincing evidence," *Zulworld Shipping, Inc.* v. *Prams Water Shipping Co., Inc.*, No. 11 Civ. 7597 (KBF), 2013 WL 2246913, at *2 (S.D.N.Y. May 16, 2013) (collecting cases), and "the showing required to avoid confirmation is very high."  *STMicroelectronics, N.V.,* v. *Credit Suisse Sec. (USA),* 648 F.3d 68, 74 (2d Cir. 2011); *Spector* v. *Torenberg*, 852 F. Supp. 201, 206 (S.D.N.Y. 1994) (same).

Notwithstanding the heightened deference owed to an arbitral decision, it is "generally inappropriate" for a district court to enter a default judgment in

---

[4]     The four statutory grounds for vacatur include situations: (i) where the award was procured by corruption, fraud, or undue means; (ii) where there was evident partiality or corruption in the arbitrators, or either of them; (iii) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (iv) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. § 10(a). "An arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case."  *Porzig*, 497 F.3d at 139 (internal quotation marks omitted).  The "manifest disregard" standard, first announced in *Wilko* v. *Swan*, 346 U.S. 427, 436-37 (1953), was later called into question in *Hall Street Assoc., L.L.C.,* 552 U.S. at 585 ("Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them.").  However, after the Supreme Court expressly declined to consider the vitality of the manifest disregard standard in *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010), the Second Circuit has "continued to recognize that standard as a valid ground" for vacatur of an arbitration award, *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011).

an arbitration confirmation proceeding.  *D.H. Blair & Co.*, 462 F.3d at 109.

Instead, as the Second Circuit has explained:

> [a] motion to confirm or vacate an award is generally accompanied
> by a record, such as an agreement to arbitrate and the arbitration
> award decision itself, that may resolve many of the merits or at
> least command judicial deference.  When a court has before it such
> a record, rather than only the allegations of one party found in
> complaints, the judgment the court enters should be based on the
> record.

*Id.*  In this regard, courts should treat a request for a default judgment seeking

confirmation of an arbitration award "as akin to a motion for summary

judgment based on the movant's submission."  *Id.* at 109-10 ("[G]enerally a

district court should treat an unanswered ... petition to confirm/vacate as an

unopposed motion for summary judgment."); *Trustees of the New York City*

*Dist. Council of Carpenters Pension Fund, et al.* v. *Ferran Dev. Corp.*, No. 13 Civ.

1482 (LAK) (GWG), 2013 WL 2350484, at *2 (S.D.N.Y. May 30, 2013)

("Therefore, a default judgment seeking confirmation of an arbitration award

should be treated as akin to a motion for summary judgment based on the

movant's submissions." (internal quotation marks omitted) (collecting cases))

(Report and Recommendation).

Under Federal Rule of Civil Procedure 56(c), summary judgment may be

granted only if all the submissions taken together "show that there is no

genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322

(1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The

10

moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

The non-movant cannot "simply ignore such a motion.  If the non-movant does not respond, its failure to contest issues not resolved by the record will weigh against it." *D.H. Blair & Co.*, 462 F.3d at 109.  At the same time,

> [w]here a non-moving party fails to respond to a motion for summary judgment, a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*."

*Id.* at 109-10 (quoting *Vt. Teddy Bear Co.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in *Vt. Teddy Bear Co.*).

**B.    Application**

**1.    The Arbitration Award Is Confirmed**

Petitioners' Petition to confirm the Award is unopposed.  Petitioner has, in addition, provided uncontroverted materials that demonstrate the absence of a material issue of fact for trial.  Petitioners commenced arbitration in accordance with the CBA, and now seek confirmation of the Award rendered in their favor, as explicitly provided for under the agreement.  (Virginia Decl., Exh. B).  The evidence submitted at the arbitration established that, pursuant to the CBA, Respondent was required to make certain payments to the Funds, and an auditor confirmed that said payments were not in fact made.  (*Id.*).  The arbitrator was also provided with proof, by submission of the CBA, that Respondent was bound by the CBA, an agreement that authorized the arbitrator to resolve the parties' dispute and "to fashion an appropriate remedy including, but not limited to, monetary damages … interest, liquidated damages, and/or costs as may be applicable under the [CBA]."  (Virginia Decl., Exh. A at 31).

Moreover, a review of the arbitrator's decision demonstrates that it was careful and well-reasoned.  The arbitrator proceeded to hear Petitioners' case only after confirming that Respondent intended to default, as Respondent has done here.  As for the Award, it was rooted in the documentary and testimonial

12

evidence offered by Petitioners.  On the record before the Court, there is no reason to doubt that the arbitrator acted within the scope of his authority to render the Award, nor any reason to find that any other basis for vacatur exists.

As noted, the FAA requires that, if the parties agreed, as they did here, that a judgment may be entered upon an arbitration award, a court must enter an order confirming the arbitration award unless one of the statutorily specified grounds for vacatur is found to exist.  9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration … the court must grant [a request for an order confirming the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."); *Hall Street Assoc., L.L.C.*, 552 U.S. at 587 ("On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'  There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." (quoting 9 U.S.C. § 9)).  There being more than "barely colorable justification" for the arbitrator's award, and no material issue of fact for trial, the Court will uphold the arbitrator's decision and confirm the Award. *Trustees of the New York City Dist. Council of Carpenters Pension Fund, et al.* v. *TNT Contracting & Consulting, Inc.*, No. 12 Civ. 8 (ALC), 2012 WL 548816, at * 1

13

(S.D.N.Y. Feb. 17, 2012) ("The court will uphold the arbitrator's decision so long as there is a 'barely colorable justification' for the award." (citing *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund* v. *Stain Less, Inc.*, No. 07 CV 3202 (FB), 2008 WL 782758, at *1 (E.D.N.Y. Mar. 20, 2008)); *see also Constr. and Gen. Bldg. Laborers Local 66* v. *Am. Plaster, Inc.*, No. 12 Civ. 7254 (KBF), 2013 WL 2237572, at *1 (S.D.N.Y. May 15, 2013) (confirming arbitration award where the defendant failed to respond and there was no material issue of fact for trial).  Accordingly, the Court grants Petitioners' unopposed Petition to confirm the Award.

The Court need not conduct any further inquiry into damages because the Award is for a sum certain.  *Abondolo* v. *H. & M. S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *3 (S.D.N.Y. May 12, 2008) ("Because the Arbitration Award is for a sum certain, no further inquiry into damages is necessary.") (confirming arbitration award); *Herrenknecht Corp.* v. *Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007) (same).  Therefore, judgment in the amount of $5,589.77, plus interest to accrue at the rate of 5.25% from May 9, 2013 — the date of the Award — through the date of judgment, is appropriate.

### 2.     Petitioners Are Entitled to Attorney's Fees and Costs

Petitioners request attorney's fees in the amount of $727.00 and costs in the amount of $400.00 incurred in prosecuting this action.  (Virginia Decl. ¶¶ 18-19).  Under what is generally known as the American Rule, "[e]ach

14

litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010); *see also U.S. Fidelity and Guar. Co.* v. *Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) ("Under the American Rule, it is well established that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."). Here, Petitioners are entitled to attorney's fees under both ERISA and the CBA. Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The CBA further authorizes the Court to award "reasonable attorney's fees and costs of the action." (Virginia Decl., Exh. B at 30 ("In the event that formal proceedings are instituted before a court of competent jurisdiction … [Respondent] shall pay … reasonable attorney's fees and costs of the action.")). In addition, "courts have routinely awarded attorneys fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Abondolo*, 2008 WL 2047612, at *4 (collecting cases); *see also First Nat'l Supermarkets, Inc.* v. *Retail, Wholesale & Chain Store Emps.*, 118 F.3d 892, 898 (2d Cir. 1997) ("In actions for the confirmation and enforcement of arbitral awards, a court may award attorneys' fees if the party challenging the award has refused to abide by an arbitrator's decision without justification." (internal quotation marks omitted)). This is precisely how Respondent has proceeded.

15

Respondent failed to comply with the CBA, both in not making the required payments to the Funds and by not participating in arbitration.  To date, it has continued to ignore its obligations by refusing to abide by the Award or to respond to Petitioners' Petition.  There is, therefore, ample basis on which to award Petitioners the attorney's fees and costs incurred in this action.

To support their request for attorney's fees, Petitioners submitted invoices that documented the specific tasks performed, the hours worked, and the associate's and paralegals' hourly rate.  (Virginia Decl., Exh. E).  A total of 4.9 hours of work was completed by one associate, who was billed at $200 per hour, and two paralegals, who were billed at $90 per hour.  (Virginia Decl., ¶¶ 15-16, 18-19).  A review of these invoices demonstrates that the requested attorney's fees are reasonable.  *See, e.g., Trustees of New York City Dist. Council of Carpenters Pension Fund*, 2012 WL 3578849, at *6 (Report and Recommendation recommending confirmation of arbitration award and award of attorney's fees for 4.7 hours of work at a rate of $200 per hour for an associate with comparable experience and $90 per hour for a paralegal); *Trustees of the New York City Dist. Council of Carpenters Pension Fund* v. *Anthem Contracting Inc.*, No. 11 Civ. 9167 (JGK), 2013 WL 2111285, at *3 (S.D.N.Y. May 16, 2013) (confirming arbitration award and awarding attorney's fees for 20 hours of work at "rates ranging from $250 per hour for the most senior attorney to $90 per hour for paralegals").  Accordingly, Petitioners are entitled to attorney's fees and costs in the amount of $1,127.00.

16

**CONCLUSION**

For the foregoing reasons, Petitioners' Petition is granted.  The Award is confirmed, and the Clerk of Court is directed to enter judgment in favor of Petitioners and against Respondent in the amount of $5,589.77, plus interest at the rate of 5.25% from May 9, 2013, through the date of judgment, together with attorney's fees and costs in the amount of $1,127.00.

The Clerk of Court is further directed to close the case.

SO ORDERED.

Dated:  December 10, 2013
        New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge